Gary D. Brunckhorst,                                    Civil No. 16-455 (DWF/TNL)

                    Plaintiff,

                                                        **MEMORANDUM**
v.                                                      **OPNION AND ORDER**

City of Oak Park Heights,

                    Defendant.

---

Thomas E. Glennon, Esq., Thomas E. Glennon, P.A., counsel for Plaintiff.

Julie Anne Fleming-Wolfe, Esq., Fleming-Wolfe Law, P.A., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment by Defendant City of Oak Park Heights ("Defendant" or the "City"). (Doc. No. 19.) This case centers on alleged discrimination claims under Title I of the Americans with Disabilities Act of 1990 ("ADA") and the Minnesota Human Rights Act ("MHRA"). Plaintiff Gary Brunckhorst brought this action after he was terminated by the City from his position as Senior Accountant/Payroll Technician ("Senior Accountant"). (*See generally* Doc. No. 1 ("Compl.").) For the reasons set forth below, the Court grants the City's motion.

## BACKGROUND

Brunckhorst was employed by the City as a Senior Accountant from January 1999 until his termination in April 2015. In this role, Brunckhorst was responsible for

managing the payroll functions of the department, which included maintaining employee

files, collecting time cards, issuing paychecks, and assisting other employees with

changes to their withholdings.  (Doc. No. 21 ("Flemming-Wolfe Aff.") ¶ 2, Ex. 1

("Plaintiff Dep.") at 12.)  In addition, Plaintiff provided backup for accounts payable and

utility billing.  (*Id.* at 10.)  Plaintiff also performed basic IT functions, such as purchasing

and setting up computers, and maintaining the servers and the network.  (*Id.* at 10-11.)

Brunckhorst's supervisor also stated that Brunckhorst would provide back-up support to

the front office by answering phones when needed.  (Flemming-Wolfe Aff. ¶ 4, Ex. 3

("Caruso Dep.") at 17.)  Brunckhorst received satisfactory performance reviews.  (*Id.* ¶ 3,

Ex. 2 ("Johnson Dep.") at 32-33.)

The job description for a Senior Accountant listed various "Essential Functions"

including:

- Record, maintain, balance, and reconcile accounts payable, accounts receivable, payroll, utilities and cash for City funds.
- Prepare payroll and review to ensure accuracy including fringe benefits and leave calculations.
- Provide technical maintenance support for PC's and/or computer network.  Assist users with applications as necessary.
- Installs hardware, including peripherals.  Load Programs and generally prepare systems for users.
- Prepare payroll reporting for quarterly and annual transmissions to the proper agencies.
  . . .
- Performs general accounting procedures as directed by the Finance Director.

(Flemming-Wolfe Aff. ¶ 5, Ex. 4 ("Job Description").)  Additionally, the Job

Description indicated that a Senior Accountant may need to lift or move up to forty

pounds and that the Senior Accountant would frequently be required to stand, walk, sit, and reach with hands and arms.  *Id.*

On or around April 15, 2014, Brunckhorst contracted Fournier's Gangrenous Necrotizing Fasciitis, a life-threating disease (Plaintiff Dep. at 55-57), which resulted in bilateral leg neuropathy, acute kidney injury, and lumbar radiculopathy. (Flemming-Wolfe Aff. ¶14, Ex. 13.)  Brunckhorst requested and was granted twelve weeks of leave under the Family Medical Leave Act ("FMLA").  (Flemming-Wolfe Aff. ¶ 6, Ex. 5.)  At the end of the twelve weeks, the City wrote to Brunckhorst explaining that his leave was exhausted and requesting that they "begin a dialog" regarding a potential return to work date.  (*Id.*)  The City also noted that if Brunckhorst needed additional time, then he could request additional unpaid leave under City Ordinance 203.14(B)(2).  (*Id.*) This ordinance allows the City Administrator, at his or her discretion, to grant an employee ninety days' unpaid leave of absence, with the option for an extension not exceeding one year.  (Flemming-Wolfe Aff. ¶ 7, Ex. 6 ("City Ordinance").)

On July 29, 2014, Brunckhorst wrote to the City requesting an indefinite unpaid leave of absence under the City Ordinance because he was still recovering and unable to return to work.  (Flemming-Wolfe Aff. ¶ 8, Ex. 7.)  On August 11, 2014, the City granted him sixty days' leave and requested a health status update by September 29, 2014, noting the potential for up to thirty additional days of leave.  (*Id.* ¶ 9, Ex. 8.)  On September 15, 2014, the City sent Brunckhorst the Senior Accountant Job Description and requested that Brunckhorst's doctor confirm that Brunckhorst could perform the Senior Accountant's essential functions with or without reasonable accommodation.  (*Id.* ¶ 10,

Ex. 9.)  On September 26, 2014, Brunckhorst requested an additional thirty days' leave and included a letter from his doctor stating that Brunckhorst would likely be unable to return to work even after thirty more days.  (*Id*. ¶ 11, Ex.10.)  The City granted the additional thirty days' leave on September 30, 2014, reaching the ninety-day threshold. (*Id*. ¶ 12, Ex. 11.)

On October 24, 2014, the City requested an update on Brunckhorst's progress, as he had exhausted FMLA leave and the ninety days' unpaid leave under the City Ordinance.  (*Id*. ¶ 13, Ex. 12.)  In particular, the City stated: "Based on your follow-up, we want to determine from your doctor whether you can perform your job duties with or without reasonable accommodation, and whether you are able to perform your job safely." (*Id*.)  The City also included a Medical Certification form with the letter, which the City requested be completed by November 7, 2014.  (*Id*.)  On November 6, 2014, Brunckhorst indicated that he would not be able to return to work until December 1, 2014, and requested additional leave until he was cleared.  (*Id*. ¶ 14, Ex. 13.)

On November 14, 2014, the City extended Plaintiff's leave through December 1, 2014.  (Flemming-Wolfe Aff. ¶ 15, Ex. 14.)  The City also requested that a Medical Certification form be completed indicating a potential return date and any accommodations that may be needed to safely perform the job duties.  (*Id*.)  On November 24, 2014, Brunckhorst's doctor returned the form and indicated that Brunckhorst would be unable to return to work by December 1, 2014, but may be able to return by January 1, 2015.  (*Id*. ¶ 16, Ex. 15.)

While Brunckhorst was on leave, many of his duties were assumed by others: City Finance Director Betty Caruso and Accountant Judy Tetzlaff took over Brunckhorst's finance and payroll duties, while the City's computer consultant assumed Brunckhorst's IT responsibilities. (Johnson Dep. at 37-38.) As a result, City Administrator Eric Johnson told the City Council at a meeting on November 12, 2014, that the Senior Accountant position may not be needed because the duties could be absorbed by other employees. (Flemming-Wolfe Aff. ¶ 17, Ex. 16.) Once the City determined that the Senior Accountant was no longer needed, the City created a Utility Billing/Accountant Technician position to allow Brunckhorst to return to a job with the City. (Johnson Dep. at 64-66.)

On December 22, 2014, City Administrator Johnson invited Brunckhorst to a meeting with him and Finance Director Caruso. At this meeting, Brunckhorst was informed that the City planned to eliminate the position of Senior Accountant, but that the Utility Billing position would be available if he wanted to remain with the City. (Johnson Dep. at 68-69.) It was at this meeting that Brunckhorst first complained to the City that he felt that the City was discriminating against him based on his disability. (Plaintiff Dep. at 155.) In a follow-up letter to Brunckhorst on December, 23 2014, Johnson stated that "due to the fact that certain functional portions of your position . . . are no longer needed, your former position has essentially been eliminated." (Flemming-Wolfe Aff. ¶ 17, Ex. 18.) The letter also explained that the City would create a new full-time position--Utility Billing/Accounting Technician--which paid approximately $50,000. *Id.* The letter also offered Brunckhorst a severance package as

an alternative to the Utility Billing position. Brunckhorst did not accept either option because he wanted to remain employed with the City, but did not want to take the salary reduction associated with the Utility Billing position. (Plaintiff Dep. at 197-98.) Instead, Brunckhorst hired an attorney because he believed he was being discriminated against due to his disability.

On February 25, 2015, the City sent a letter to Plaintiff requesting a time line for his return to work in the new Utility Billing position. (Flemming-Wolfe Aff. ¶ 21, Ex. 20.) The City also asked that Plaintiff request any reasonable accommodations needed to return. (*Id.*) The letter further stated:

> Since October 30th, the City has continued to extend you leave as a reasonable accommodation, and has kept in close communication with you about a date certain for your return to work. Unfortunately, your doctor has not cleared you to return to work and has stated that you cannot perform the essential functions of your position with or without reasonable accommodation.
>
> As you know, your prior position is scheduled for elimination and the City has formulated a new position for your return to work. This new Utility Billing Clerk/Accounting Technician was previously presented to you on December 22, 2014 . . . . While, the position offers a lower rate of pay, it provides the same employee benefits as your former position. Additionally, the new position is classified for Union representation. . . .
>
> The City needs to move forward on this matter. Consequently, you are required to return to work, full-time, in the position of Utility Billing Clerk/Accounting Technician no later than April 1, 2015. Prior to your return, you are required to provide the City with medical certification demonstrating that you are fit for the position. The medical certification form is attached to this letter. . . If you are not able to return by this date, your employment with the City will be terminated effective April 1, 2015. If you are able to return to work, but need a reasonable accommodation to perform the essential functions of the position, please provide your request for an accommodation in writing by the close of business on March 23, 2015.

(*Id.* ¶ 15, Ex. 14.)

On March 24, 2015, Brunckhorst's counsel responded, indicating that Plaintiff wished to return to his former positon at his current rate of pay. (Flemming-Wolfe Aff. ¶ 22, Ex. 21.) Brunckhorst also proposed two accommodations that would allow him to perform the essential functions for the Senior Accountant position: (1) that he would return to work on a gradual basis, beginning by working four hours per day, at least until May 18, 2015; and (2) that he be allowed to work remotely from home during this time. (*Id.*) Accompanying the letter was a Work Ability Report from Brunckhorst's doctor. (*Id.*) The report noted that as of March 18, 2015, Brunckhorst was able to work only four hours per day and could not squat, kneel, climb stairs, reach below his knee, or lift over ten pounds for the following sixty days. (*Id.*)

The City wrote back on March 31, 2015, suggesting that Brunckhorst was not entitled to an "equivalent position" because he could not return after the twelve-week FMLA leave (Flemming-Wolfe Aff. ¶ 24, Ex. 23.) The City also requested that Brunckhorst return a new Medical Certification form because the Work Ability Report did not provide the necessary information. (*Id.*) Finally, the City informed Brunckhorst that his requested accommodations would be considered at the next City Council meeting on April 7, 2015.[1] (*Id.*) The City also maintained its position that it had attempted to

---

[1] The accommodations were presented on April 7, 2015, to the City Council and the Council voted 5-0 to continue the interactive dialogue regarding the proposed accommodations. (Flemming-Wolfe Aff. ¶ 26, Ex. 25.)

engage in an interactive dialogue with Plaintiff over "the past several months without success." (*Id.*)

On April 9 and 10, 2015, the City Attorney and City Administrator Johnson both sent letters to Brunckhorst and his counsel. (Flemming-Wolfe Aff. ¶ 27, Ex. 26.) These letters informed Plaintiff that the Senior Accountant positon had been eliminated on February 24, 2015. (*Id.*) The City indicated that it remained committed to collaborating with Brunckhorst, and noted that if he wished to return to work for the City in the Utility Billing positon, two accommodations would be provided: (1) a graduated return to work schedule through May 18, 2015; and (2) the ability to work four hours per day from 8:00 a.m. to 12:00 p.m. at City Hall during this time period. (*Id.*)

On April 14, 2015, Brunckhorst wrote to the City rejecting the City's proposed accommodations and again requesting that he return as a Senior Accountant and to work from home during his gradual return. (Flemming-Wolfe Aff. ¶ 28, Ex. 27.) On April 24, 2015, Brunckhorst wrote again requesting a meeting with City Administrator Johnson, the Mayor of Oak Park Heights, and a member of the City Council. (*Id.* ¶ 29, Ex. 28.) The City had previously rejected such a meeting, offering instead a meeting with the City Administrator, the Finance Director, and legal counsel. (*Id.* ¶ 30, Ex. 29.) Brunckhorst, however, did not accept the alternative meeting. (*See id.*).

At the April 28, 2015 City Council Meeting, City Administrator Johnson presented the Council with an update on the communications with Brunckhorst . (*Id.* ¶ 31, Ex. 30.) After the update, the Council voted unanimously to terminate Brunckhorst's employment. (*Id.*) On April 29, 2015, the City sent Brunckhorst notice

that the City would be terminating his employment effective immediately because of Brunckhorst's continued rejection of the City's proposed accommodations and his failure to offer any alternative accommodations other than those that the City had already rejected. (Flemming-Wolfe Aff. ¶ 30, Ex. 29.)

Brunckhorst commenced this action on February 23, 2016. Plaintiff asserts two causes of action: (1) discrimination under Title I of the ADA; and (2) unlawful employment practices under the MHRA. (*Id.* at ¶¶ 7, 30.) Defendant now moves for summary judgment on both counts. (Doc. No. 19.)

## DISCUSSION

### I.     Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate

the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Disability Discrimination

Plaintiff argues that the City discriminated against him on the basis of his disability by terminating his employment and failing to provide a reasonable accommodation. Both the ADA and MHRA prohibit employers from discriminating against employees on the basis of disability. 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subd. 2. Discrimination includes the failure to make reasonable accommodations to "the known disability of a qualified disabled person." 42 U.S.C. § 12112(b)(5)(A); Minn. Stat. § 363A.08, subd. 6(a).

Claims under the ADA and MHRA are analyzed under the *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003); *see also Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 & n.4 (8th Cir. 2007) (holding that federal precedent may be used to construe both ADA and MHRA claims). Under this framework, the employee bears the initial burden of proving a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. The employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*

at 802-03. Finally, to prevail, plaintiff must show that the defendant's proffered reason was a pretext for discrimination. *Id.* at 804.

To establish a prima facie case of disability discrimination, a plaintiff must show that: (1) he was disabled; (2) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action as a result of the disability (or under circumstances from which an inference of unlawful discrimination arises). *See Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012).[2] The burden-shifting analysis is "modified" for a failure to accommodate claim. *See Peebles v. Potter*, 354 F.3d 761, 765-68 (8th Cir. 2004); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003).[3] To establish a claim for failure to accommodate, Plaintiff must first make a facial showing that a reasonable accommodation is possible and, if that showing is made, the burden of production then shifts to the employer to show that it was unable to accommodate Plaintiff. *See Fenney*, 327 F.3d at 712; *Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 842 (8th Cir. 2003).

---

[2]    When an employee is discharged pursuant to a bona fide reduction in force (RIF), "some additional showing [is] necessary to make a prima facie case." *Hansen v. Robert Half Int'l*, 813 N.W.2d 906, 918-19 (Minn. 2012) (citation omitted). Specifically, an employee must make an additional showing that his protected class status, in this case his disability, was a factor in the termination decision. *Id.* Because this case can be resolved without consideration of an "additional showing," the Court does not reach the issue of whether this case involves a RIF.

[3]    This is because a failure to accommodate claim does not turn on an employer's intent or motive. *Peebles*, 354 F.3d at 765-68.

For purposes of the present motion, the City does not dispute that Brunckhorst has a disability within the meaning of the ADA, that Plaintiff is a "qualified individual," or that he suffered an adverse employment action. Instead, the parties' dispute centers on whether record evidence is sufficient to give rise to an inference of discrimination and whether the City failed to accommodate Plaintiff's disability. Plaintiff claims that he was terminated by the City because of his disability and that the City discriminated against him by failing to make a reasonable accommodation and failing to engage in the interactive process. The City disagrees and claims that Plaintiff was terminated because his position was eliminated and that Plaintiff refused to accept a new position created for him so that he could return to work following medical leave. The City argues that Plaintiff's discrimination claims fail as a matter of law.

**A.      Failure to Accommodate**

Brunckhorst argues that he formally requested the following reasonable accommodations: (1) a graduated return to work over 120 days; and (b) the ability to work from home during that period. Brunckhorst also argues that the City failed to grant those accommodations. The City argues that Plaintiff's suggestion that it failed to make reasonable accommodations to Plaintiff's known limitations is belied by the undisputed facts that the City extended Plaintiff's leave on numerous occasions as an accommodation to Plaintiff being unable to return to work, that the City created a new position for Plaintiff so that Plaintiff could return to work, and that the City continually corresponded with Plaintiff in an effort to assist him in his return to work. The City argues that Plaintiff's only unmet requests for accommodation were that he be placed in

12

his former position and be allowed to work from home. The City further contends that these requests were neither reasonable nor supported by the medical documentation submitted by Plaintiff, the latter which identified a four-hour work limitation per day with some standing, bending, and lifting restrictions that would not have prevented Plaintiff from working on-site. The City stresses that Plaintiff's doctor never indicated that Plaintiff had to work from home or that Plaintiff had any medical limitation that prevented him from returning to work at City Hall. Indeed, Brunckhorst's doctor completed the Work Ability Report when Brunckhorst first discussed returning to work, and that report does not indicate that Plaintiff had to work from home.

Additionally, the City argues that, even if it had granted Plaintiff's requested accommodation to return to his original job but work from home, Plaintiff would not have been able to perform certain required duties, such as setting up computers, scanning timecards, timesheets, and time-off requests from employees. The City also points to record evidence that Plaintiff had never performed his finance or IT duties remotely, and the City, therefore, would have needed to purchase, install, and maintain a telephone and computer in his home so he could communicate with coworkers and access the City's computer system. In addition, the City would have had to assess and install proper security measures because the information that Brunckhorst worked with was confidential. Finally, the City points to evidence that its employees and, in particular, finance employees work as a team, cover for each other when necessary, and perform each other's duties at times as a backup.

In support of his failure-to-accommodate claim, and namely his request to work from home, Plaintiff points to evidence that the job descriptions for the Senior Accountant and Utility Billing Clerk did not explicitly require that the functions of those positions be performed on-site at City Hall. Moreover, Plaintiff points to testimony that many of the essential functions of the Senior Accounting position were performed on a computer at a desk and on the telephone. Further, Brunckhorst testified that all of the essential functions could be performed remotely, and City Administrator Johnson acknowledged that the City could have handled allowing Plaintiff to work remotely for a period of time. Finally, Plaintiff argues that the City's assertion that Plaintiff's duties could not be performed remotely is untrue (and pretextual) because the City was able to function without Plaintiff's physical presence at City Hall after he was terminated and because the City did not ultimately fill the Utility Billing Clerk position.[4]

The Court concludes that Plaintiff has failed to state a prima facie case of discrimination insofar as it is based on the City's alleged failure to accommodate. Plaintiff's claim is based on the City's refusal to allow Plaintiff to work from home at his

---

[4]    Plaintiff submits the following as additional evidence of discriminatory intent and pretext: (1) Johnson incorrectly informed Plaintiff that he was limited to ninety days' unpaid leave when he was entitled to up to one year; (2) Johnson decided to eliminate Plaintiff's position while he was on leave; (3) Johnson incorrectly informed Plaintiff in December 2014 that the certain functions of his Senior Accountant/Payroll Technician position were no longer needed when those functions continued to be performed, albeit by other employees; (4) Johnson presented Plaintiff with two separation agreements that would have released Plaintiff's claims against the City; (5) Johnson offered Plaintiff an inferior, lesser-paid Utility Billing Clerk position; (6) Johnson denied Plaintiff's demand to be restored to his former position; and (7) Johnson decided not to interactively dialogue with Plaintiff regarding his requested reasonable accommodation or to grant his requested reasonable accommodation.

former position.  However, there is nothing in the record to suggest that Plaintiff's doctor thought that Plaintiff must work from home or that Plaintiff presented any medical documentation to suggest that he could not return to work at City Hall.  Indeed, the only limitations indicated by Plaintiff's doctor were that Plaintiff could work only four hours a day, could not lift over ten pounds, and could rarely stand or walk.  The record demonstrates that the City granted Plaintiff a four-hour work limitation, and because Plaintiff's job was a desk job, there was no requirement that Plaintiff stand or walk while at work.  Plaintiff testified that he could not work at City Hall because he could not drive or navigate stairs, and because he has episodic leg pain that required him to lie down and hold up his feet.  However, there is no record evidence that Plaintiff raised these limitations to the City prior to his termination or that Plaintiff's doctor agreed with or identified these limitations.[5]  *See Liljedahl*, 341 F.3d at 842 (noting that doctors did not testify that plaintiff's purported limitations required a modified work schedule or other accommodations).  The City cannot be expected to accommodate limitations of which it was unaware or which were not supported by medical documentation.  *See id*. (noting that an employer must accommodate *known* limitations and a required accommodation must relate to the limitations).

In addition, the City argues that to allow Plaintiff to work at home in his original position, the City would have had to alter certain aspects of the way it did business.  For example, the City puts forth evidence that it is a small employer whose primary function

---

[5]     Plaintiff also acknowledged that he could have used metro-mobility and a ramp to get to and from work and that the use of a couch in an empty office space could have addressed his leg pain.  (Brunckhorst Dep. at 151-52, 172-75.)

is to service its citizens, and that its employees, including finance employees, are cross-trained so that they cover for each other and provide on-site availability. Moreover, Plaintiff's position involved teamwork and the supervision of the Finance Director and the City Administrator.

The Court notes that an employer is not required to provide an accommodation that is requested or preferred by an employee—instead, the accommodation need only be "reasonable." *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1019 (8th Cir. 2000). Courts have also concluded that working from home under certain circumstances would impose an undue burden on the employer and is, therefore, not a reasonable accommodation. *See Morrissey v. Gen. Mills, Inc.*, 37 Fed. App. 842, 844 (8th Cir. 2002) (concluding that allowing an employee to telecommute would have imposed an undue burden where the employee (accountant) worked together with another employee to process invoices with original signatures and telecommunication would have created additional work for a coworker and required courier deliveries that would cost money and raise confidentiality concerns); *Heaser v. Toro Co.*, 247 F.3d 826, 832 (8th Cir. 2001), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (holding that plaintiff failed to make a prima facie case because she failed to show that the use of her computer at home was a reasonable accommodation).

Here, the record establishes that the City offered Plaintiff a reasonable accommodation by allowing him to work a four-hour workday and providing him multiple extensions to his leave period. Plaintiff has not pointed to sufficient evidence that, even with the accommodation of working from home, he would have been able to

16

perform all of the functions of his job. Moreover, the request to work from home was not supported by his medical documentation. The Court concludes, on the record before it, that Plaintiff has failed to establish that the option of working from home was a reasonable accommodation that the City was obligated to offer Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, no reasonable juror could conclude that the City failed to offer Plaintiff a reasonable accommodation to address his disability.

Therefore, the Court grants the City's motion for summary judgment on Plaintiff's discrimination claim insofar as this claim is based on a failure to accommodate.

### B.      Failure to Engage in Interactive Dialogue

Brunckhorst also argues that the City refused to engage in an interactive dialogue. Specifically, Plaintiff asserts that he requested on numerous occasions that the City engage in interactive dialogue with him concerning his requested forms of reasonable accommodation. Brunckhorst asserts that he was offered a "take it or leave it" proposal, forcing him to choose between one accommodation and termination. Plaintiff alleges that as soon as he declined the accommodation proposed by the City, the dialogue ended.

There is no per se liability under the ADA if an employer fails to engage in an interactive process to determine whether reasonable accommodations are possible. *Cravens*, 214 F.3d at 1021. But for the purposes of summary judgment, a failure to engage an interactive process is prima facie evidence that the employer may be acting in bad faith. *Id.* To establish that the City failed to participate in an interactive process, Plaintiff must show that: (1) the City knew about Plaintiff's disability; (2) Plaintiff requested accommodation or assistance for his disability; (3) the City did not make a

good-faith effort to assist the employee in seeking accommodation; and (4) the City could have been reasonably accommodated but for the City's lack of good faith. *Id*. (citing *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 952 (8th Cir. 1999)).

Applying this analysis to the facts of the case, and viewing the facts in the light most favorable to Plaintiff, the Court finds that no reasonable juror could conclude that the City failed to participate in the interactive process. The record establishes the City's efforts to accommodate Brunckhorst, which include a months-long dialogue with Brunckhorst regarding his illness and the City's multiple extensions of Plaintiff's leave. Moreover, the record establishes that the City made multiple requests for information and medical documentation related to Brunckhorst's potential return to work and any limitation that would be placed on his ability to perform the essential functions of his job. In addition, the City engaged with Brunckhorst when it notified him of the availability of extended leave after the expiration of his FMLA leave and by inquiring into the accommodations that he would need to return to work. The City also offered to accommodate Brunckhorst by allowing him to return to work on a four-hour workday. Indeed, the City had been negotiating Plaintiff's return to work for months.

For the above reasons, the Court grants the City's motion for summary judgment on Plaintiff's discrimination claim insofar as Plaintiff asserts a failure to engage in an interactive process.

### C.    Discriminatory Termination

Plaintiff also argues that his termination was discriminatory. Many of the facts relevant to this claim overlap with the claims discussed above. In short, Plaintiff argues

that the City terminated his employment because it was unwilling to accommodate his

disability and wanted to avoid future accommodation.  The Court concludes that Plaintiff

has failed to meet the evidentiary minimum for this claim because Plaintiff has not

pointed to facts in the record that would support the existence of a causal connection

between his disability and the elimination of his former position.  Instead, the record

demonstrates that after Plaintiff left on medical leave in April 2014, the City repeatedly

permitted and approved additional leave periods, accepted numerous requests by Plaintiff

to extend his leave, and ultimately created a position specifically designed to provide

Plaintiff a job upon his return from medical leave.  While it is true that the City ultimately

eliminated Plaintiff's former position, that elimination occurred only after the City

discovered that Plaintiff's former duties could be efficiently performed by other

employees.  Even so, the City created and offered Plaintiff a different position and the

accommodation of a four-hour workday, which Plaintiff ultimately declined.[6]

Viewing the evidence in the light most favorable to Plaintiff, the Court determines

that Plaintiff has not pointed to sufficient evidence in the record to support the existence

of a causal connection between his disability and the elimination of his former position.

Moreover, even if Plaintiff could establish a prima facie case, there is no evidence that

Plaintiff's termination was a pretext for disability discrimination.  Again, Plaintiff was

granted multiple leaves of absence beyond what was required, and after his former

position was eliminated, a new position was created in an effort to keep Plaintiff

---

[6]     Plaintiff points out that the new position came with a lower salary.  However, when an employee cannot be accommodated in a current position, an employer may reassign an employee to a lower-paid position.  *See, e.g.*, *Cravens*, 214 F.3d at 1019.

employed.  For these reasons, the Court grants the City's motion for summary judgment on Plaintiff's discrimination claim insofar as Plaintiff asserts a claim for discriminatory termination.

## III.    Retaliation Claim

Plaintiff also asserts that the City retaliated against him by terminating his employment after he reported the City's alleged discrimination against him.  In support, Plaintiff contends that:  (1) on April 14, 2015, he informed the City of his good-faith belief that his rights as a disabled employee had been and were being violated; (2) that he unsuccessfully attempted to facilitate a meeting with the City to discuss alternative forms of reasonable accommodation; and (3) on April 29, 2015, the City informed Plaintiff that he was being terminated because of his rejection of the City's proposed accommodation. The City argues that Brunckhorst fails to state a prima facie case of retaliation because Plaintiff cannot establish a causal connection between his complaint of discrimination and his termination.

The Court analyzes Plaintiff's retaliation claim under *McDonnell Douglas*. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007).  Under this framework, the initial burden is on Plaintiff to establish a prima facie case, consisting of evidence:  (1) he engaged in statutorily protected activity; (2) an adverse employment action was taken; and (3) a causal connection exists between the two events.  *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006).  If Plaintiff establishes a prima facie case, the burden then shifts to the City to show a non-retaliatory reason for the adverse employment action, at which point the burden returns to Plaintiff

20

who must present evidence that creates both: (1) a question of fact as to whether the City's reason was pretextual; and (2) a reasonable inference that the City acted in retaliation. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005) (citation omitted).

Here, Plaintiff argues that the temporal proximity between his claim of discrimination and the termination of his employment provides strong support for retaliatory intent. The Court disagrees. The record demonstrates that Plaintiff first complained that he was being discriminated against because of his disabilities on December 22, 2014, when he met with Johnson and Caruso and was told that his position had been eliminated and offered him a position in the newly created Utility Billing Clerk position. (Plaintiff Dep. at 79-80, 155.) More than four months passed before Plaintiff was officially terminated. Based on the record before the Court, this four-month period of time negates any inference of a causal connection between his complaint of discrimination and his termination. *Cf. Noyes v. Am. Tissue Servs. Found.*, 310 F. App'x 52, 53 (8th Cir. 2009) (affirming the district court's conclusion that a causal connection cannot be inferred when four-to-five months separated the protected conduct and the adverse action). Therefore, the Court grants the City's motion for summary judgment on Plaintiff's retaliation claim.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Summary Judgment (Doc. No. [19]) is

**GRANTED**.

2.    Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 28, 2017        <u>s/Donovan W. Frank</u>
                                             DONOVAN W. FRANK
                                             United States District Judge